# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UL LLC, | CASE NO.1:15-cv-10804 |
|     Plaintiff, | |
| v. | |
| Peter Borys, Jack Borys, a/k/a Jacek Borys, Bobbie Borys, B&B Signs & Awnings Inc., Advanced Neon & Signs, Inc., Advanced Neon & Signs of USA Inc., Elite Led & Signs Inc., | JURY TRIAL DEMANDED |
|     Defendants. | |

## COMPLAINT

Plaintiff UL LLC ("UL" or "Plaintiff") hereby alleges:

## JURISDICTION

1.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b) because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

2.    The Court has supplemental jurisdiction over the claims arising under the laws of the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

3.    This Court has personal jurisdiction over Defendants, because Defendants have transacted business in the State of Illinois and within this District, made contracts substantially

1

connected with this State, and committed tortious acts within, and directed to, this State. Particularly, UL's claims for trademark infringement, counterfeiting, and unfair competition arise from harm sustained in the State of Illinois. On information and belief, Defendants have purposefully directed activity at the State of Illinois by contracting with UL within the State of Illinois, and by transacting business with UL within the State of Illinois, regarding Defendants' usage of certification mark labels for electric signs and electric sign components. On further information and belief, Defendants are causing tortious injury in the State of Illinois by acts or omissions outside of the State of Illinois.

## **VENUE**

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District, and Defendants are contractually obligated to defend its action in this District.

## **THE PARTIES**

5.     Plaintiff UL is a Delaware limited liability company located and doing business at 333 Pfingsten Road, Northbrook, Illinois 60062.

6.     Defendant B&B Signs & Awnings Inc. is a Florida Corporation located and doing business at 12345 62nd Street N., Unit B, Largo, FL 33773. B&B Signs & Awnings, Inc. imports LED sign components from China and manufactures electric signs in the Tampa Bay area. B&B Signs & Awnings, Inc. was a UL client for electric signs between February 2002 and January 19, 2007. UL terminated B&B Signs & Awnings, Inc. as a client for failure to pay amounts invoiced by UL for testing and certification services. B&B Signs & Awnings, Inc. has not been authorized to use any UL trademark or certification mark since January 20, 2007.

7.     Defendant Advanced Neon & Signs Inc. is an inactive Florida Corporation located at 12345 62nd Street N., Unit B, Largo, FL 33773.

8.     Defendant Advanced Neon & Signs of USA Inc. is a Florida Corporation located and doing business at 12345 62nd Street N., Unit B, Largo, FL 33773.

9.     Defendant Elite Led & Signs Inc. is a Florida Corporation located and doing business at 12345 62nd Street N., Unit B, Largo FL 33773.[1]

10.     Defendant Jack Borys, a/k/a Jacek Borys, is an individual residing at 10233 137th Lane N., Largo, FL 33774.  Jack Borys is the President of B&B Signs & Awnings Inc., Advanced Neon & Signs Inc., and Advanced Neon & Signs of USA Inc.

11.     Defendant Peter Borys is an individual residing at 601 2nd Street N., Indian Rocks Beach, FL 33785.  Peter Borys is a principal of B&B Signs & Awnings, Inc. and a Vice-President of Elite Led & Signs Inc.  On information and belief, Peter Borys and Jack Borys are brothers.

12.     Defendant Bobbie Borys is an individual residing at 10233 137th Lane N.,  Largo, FL 33774.  Bobbie Borys is a Vice-President of Advanced Neon & Signs of USA Inc.

13.     On information and believe, each of Defendants B&B Signs & Awnings Inc., Advanced Neon & Signs, Inc., Advanced Neon  & Signs of USA Inc., and Elite Led & Signs Inc. are alter egos of Defendants Peter Borys, Jack Borys, and Bobbie Borys and of each other.  On further information and belief, Defendants B&B Signs & Awnings Inc., Advanced Neon & Signs, Inc., Advanced Neon  & Signs of USA Inc., and Elite Led & Signs Inc. are not adequately funded and did not observe appropriate corporate formalities.

---

[1] B&B Signs & Awning Inc., Advanced Neon & Signs, Inc., Advanced Neon & Signs USA Inc., and Elite LED & Signs Inc. are collectively referred to herein as "B&B Signs."

## NATURE OF THIS ACTION

14.     This is an action for trademark infringement, counterfeiting, and unfair competition under the Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1051, et seq., and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.  This is also an action for breach of contract.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.     UL'S VALUABLE RIGHTS

15.     Founded in 1894, UL, including its affiliates and predecessors, is one of the oldest certification companies in the United States.  UL has tested, inspected, and certified products as well as developed safety standards for over a century.

16.     UL's services include promulgating safety standards, certifying that representative samples of products satisfy applicable safety standards, and providing follow-up testing and inspection services to confirm that manufacturers are in compliance.

17.     UL is a global independent safety science company offering certification, validation, testing, inspection, advising, training, and auditing services for a variety of industries around the globe.

18.     UL owns the well-known UL-in-a-circle certification mark and variations thereof (the "UL Certification Marks").  UL also owns the service mark UL (the "UL Service Mark").

19.     UL has been providing testing reports and certifying products that conform to UL's Standards for Safety since at least 1906.  Since at least 1906, UL, including its affiliates and predecessors, have continuously used the UL Service Mark in interstate commerce.

20.     UL has been testing products and authorizing use of the well-known UL Certification Marks on products that conform to UL's Standards for Safety in interstate commerce in the United States since at least 1937. UL's authorized customers have been using the UL Certification Marks on products offered for sale and distributed in interstate commerce since 1937.

21.     UL serves all members of the general public, including, but not limited to, consumers, manufacturers, suppliers, retailers, vendors, trade groups, industry associations, regulatory bodies, and governmental entities.

22.     UL's thousands of authorized customers have used UL's well-known UL Certification Marks on billions of household, consumer, commercial, and industrial products including refrigeration equipment, lighting products, cable, wiring, building materials, life safety vests, electric signs, batteries and power packs for computers and consumer electronics, traffic signals, sprinklers, cash registers, and many more.

23.     Over the past century, UL has promoted recognition of its certification programs through a wide variety of marketing channels on a national, regional, and local basis, including but not limited to television, radio, consumer and trade newspapers, consumer and trade magazines, industry trade journals, promotional literature, brochures, direct mail, email campaigns, and its interactive website located at <ul.com>. UL also promotes its UL Certification Marks and the UL Service Mark through its participation in standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research.

24.     As a result of UL's extensive use of the UL Service Mark to promote its certification programs, including standards development activities, follow-up conformity

assessment and inspection services, community involvement, and safety science research, the UL Service Mark and the UL Certification Marks have attained a national and global reputation for technical expertise and integrity and have become a symbol of trust and objectivity.

25. The UL Service Mark and the UL Certification Marks are well-known and recognized by the general public, as well as by members of local, state and federal government regulatory bodies and industry trade associations, as marks indicating testing, inspection, validation, certification, training, advising, and auditing services originating with UL.

26. The UL Service Mark and the UL Certification Marks are renowned among the general public as symbols of UL's testing, inspection and certification services originating with UL, and have been renowned since long before Defendants began engaging in the conduct alleged in this Complaint.

27. UL has duly and properly registered the UL Service Mark and the UL Certification Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register. UL owns the following federally registered marks, among others. Copies of these registrations, or their corresponding USPTO website pages, are attached as Exhibits A through C.

| Mark | Reg. No. | Exhibit | Type |
|---|---|---|---|
| (UL) | 782,589 | A | Certification Mark |
| (UL) | 2,391,140 | B | Certification Mark |
| UL | 4,201,014 | C | Service Mark |

28. The federal trademark registrations referenced above are valid and subsisting, and

provide conclusive evidence of the right of UL to use the UL Service Mark and authorize the use of the UL Certification Marks in commerce.

29.     UL certifies the products of others in a variety of industries (the "Certification Services") under its UL Certification Marks (Exhibits A-B), and offers educational, business advisory, product safety testing, and public safety services (the "UL Services") under the UL Service Mark.

30.     Use and registration of the UL Certification Marks and the UL Service Mark establish that UL has senior trademark rights in the UL Certification Marks and the UL Service Mark, and consequently there is no question of priority of rights, as such priority belongs to UL.

31.     UL's United States Trademark Registration Nos. 2391140 and 782589 referenced above are incontestable under 15 U.S.C. § 1115(b).  As such, UL's incontestable federal trademark registrations confer exclusive use of the UL Certification Marks throughout the United States in connection with the UL Certification Services.

32.     UL has extensively used the UL Service Mark and has advertised, promoted, and offered the UL Services under the UL Service Mark in interstate commerce through various channels of trade.  As a result, the customers and potential customers of UL, and the public in general, have come to know and recognize the UL Service Mark as identifying the UL Services as services of the highest quality offered by UL, and associate the UL Service Mark with the UL Services.  UL has thus built up extensive and invaluable goodwill in connection with the sale of its services offered under its UL Service Mark.

**B.      THE IMPORTANCE OF CERTIFYING ELECTRIC SIGNS**

33.     Electric sign compliance with the National Electrical Code[2] is important to the

---

[2] The Court can access the National Electrical Code at http://www.nfpa.org/codes-and-standards/document-information-pages?mode=code&code=70.

safety of businesses and consumers. Inferior components, faulty wiring, and/or improper installation can lead to premature and sometimes catastrophic failure, including electrical shock and fire hazards. Such failures can cause bodily injury and death. The electrical shock and fire risks associated with non-compliant electric signs can also lead to property damage.

34.     UL tests electric signs for compliance with "UL Standard for Safety For Electric Signs, UL 48" and then certifies them.

35.     The National Electrical Code permits the relevant regulatory authority to rely on an acceptable third-party certification organization's affixation of a label bearing a certification mark, such as a UL Certification Mark, as evidence that an electric sign complies with requirements of the appropriate product standard. The presence of a label that bears the UL Certification Mark on an electric sign is the manufacturer's representation that the electric sign meets the requirements of "UL Standard for Safety for Electric Signs, UL48," that UL has performed the applicable compliance testing, and has issued a certification.

36.     Proper labeling with the UL Certification Mark is the only method provided by UL to identify UL-certified electric signs.

37.     Authorized UL labels for electric signs ("UL Electric Sign Labels") contain the following elements: (i) the UL Certification Mark; (ii) the word "LISTED" in capital letters below the UL Certification Mark; (iii) a description of the certified product, and (iv) the UL control number. Examples are shown below:





38.     For a typical electric sign manufacturer to be authorized to apply UL Electric Sign Labels, it would need to submit an application to UL, successfully complete the technical requirements of the sign certification category, and sign a Global Services Agreement ("GSA") pursuant to which a client would allow a UL inspector periodic and unannounced access to its facility(ies) under the Follow Up Service Terms which are appended to and incorporated by reference into the Global Services Agreement.

## C.     THE GLOBAL SERVICES AGREEMENT

39.     B&B Signs & Awnings Inc. entered into a GSA with UL on January 21, 2002, regarding testing and certification of electric signs.  A copy of the GSA is attached as Exhibit D.

40.     In exchange for fees paid to UL, UL agreed to provide a variety of UL services, including for example testing, certification and follow-up services for products (electric signs) submitted to UL for evaluation, inspection, and/or testing.  Following UL's certification of a submitted product, the GSA permitted B&B Signs & Awnings Inc. to use the registered UL Certification Marks on electric signs according to the terms and conditions of the GSA and Follow Up Service Terms.

41.     Under the terms of the GSA, B&B Signs & Awnings Inc. "acknowledge[d] that UL is the owner of registered Certification Marks … [and that it] assumes full and complete responsibility for its use of the Mark.  [B&B Signs & Awnings Inc.] agrees that it will, through proper inspection or otherwise, determine that products bearing the [UL Certification] Marks have been made in compliance with UL's Requirements.  [B&B Signs & Awnings Inc.] agrees that its use of the [UL Certification] Marks constitutes its declaration that the products are covered by UL Service and have been made in compliance with UL's Requirements."

42.     Under the terms of the GSA, UL could terminate the agreement with or without

cause at any time upon thirty days prior written notice to B&B Signs & Awnings Inc. and could immediately terminate the GSA in the event of a breach.

43.    UL terminated the GSA for B&B Signs & Awnings Inc.'s failure to pay on January 19, 2007.

44.    Under the terms of the GSA, B&B Signs & Awnings Inc.'s obligations existing as of the date of termination continued following termination of the GSA.

45.    Under the terms of the GSA, upon termination, B&B Signs & Awnings Inc. was obligated to "discontinue the use of the [UL Certification] Marks on or in connection with any product that is the subject of such termination."

46.    The GSA contains a governing law provision stating that "This [Global Services] Agreement shall be governed by the laws of the State of Illinois, USA without reference to its choice of law principles.  Any action related to the Agreement shall be filed in the federal or state court having jurisdiction in Cook County, Illinois, USA.  The parties consent to the exercise of personal jurisdiction of that court and shall bear any costs, legal fees and expenses incurred in transferring actions filed elsewhere."

**D.    DEFENDANTS' WRONGFUL CONDUCT**

47.    Notwithstanding UL's exclusive rights in and to the UL Certification Marks and the UL Service Mark, and well after UL's adoption and registration of the UL Certification Marks and the UL Service Mark, Defendants have been using a mark that is identical to or substantially indistinguishable from the UL Certification Marks (the "Counterfeit Mark") to falsely suggest that their electric signs have been tested and certified by UL.  Specifically, Defendants are using a Counterfeit Mark on alleged UL 48 compliant electric signs, when in fact those electric signs have never been tested or otherwise certified by UL.  Defendants have further

10

modified authentic UL Electric Sign Labels in an unauthorized manner and affixed such counterfeit labels on electric signs to falsely suggest that those electric signs have been tested and certified by UL.

48.     Upon information and belief, B&B Signs manufacture, sell and install electric signs.

49.     Though UL terminated its contract with B&B Signs in 2007, B&B Signs has continued to install signs that bear the Counterfeit Marks. To date, UL has identified 29 locations where B&B Signs is believed to have installed signs bearing Counterfeit Marks.

50.     UL sent a cease & desist demand letter to Jack Borys on April 27, 2015 (attached to the Complaint as Exhibit E[3]).  Mr. Borys never answered the April 27, 2015, cease & desist demand letter.

51.     So far, UL has identified at least the following in the Tampa Bay Area:  29 locations with counterfeit UL Electric Sign Labels and a total of 53 counterfeit UL Electric Sign Labels.  Examples of the counterfeit UL Electric Sign Labels identified as part of UL's investigation are shown below:



---

[3] Schedule B to Exhibit E contains example pictures of Defendants' electric signs that bear a Counterfeit Mark.



52.     Upon information and belief, B&B Signs has used the Counterfeit Marks to deceive the applicable regulatory authorities into believing that B&B Signs have been certified by UL and thus in compliance with the National Electrical Code.  Upon further information and belief, the applicable regulatory authorities approved the signs based at least in part on B&B Signs' counterfeiting. This presents a potential public safety risk as the electrical safety of such signs is unknown and falsely represented as being UL certified and in compliance with the National Electrical Code.

53.     B&B Signs has not had any authority to apply UL Electric Sign Labels to electric signs it has manufactured since 2007.   B&B Signs was never a client of UL for changing

12

message signs and therefore never had authorization to apply UL Electric Sign Labels to their changing message sign products.

54.     Upon information and belief, the customers who purchased these uncertified signs from B&B Signs each paid thousand dollars on the understanding that their signs would be installed and illuminated upon meeting the applicable regulatory requirements.

55.     Defendants' use of the Counterfeit Mark is identical to and confusingly similar to the UL Certification Marks in appearance, sound, meaning, and commercial impression.

56.     Defendants' electric signs that bear a Counterfeit Mark falsely suggest that Defendants' electric signs have been tested and certified by UL.

57.     Defendants' use of a Counterfeit Mark trades off the goodwill of the UL Service Mark and the UL Certification Marks and is without permission or license from UL.

58.     Defendants advertise and/or sell their electric signs in commerce using a Counterfeit Mark.

59.     Defendants' electric signs that bear a Counterfeit Mark have not been tested and certified by UL to any safety requirements, and as such, may place the health and safety of the public at risk.

60.     On information and belief, Defendants are engaged in a regular business of selling electric signs bearing a Counterfeit Mark.

61.     Upon information and belief, Defendants use and intend to continue using a Counterfeit Mark without the authorization of UL, thereby confusing consumers as to the certification of the electric signs by UL and resulting in damage and detriment to UL and its reputation and goodwill.

62.     Defendants knew or had reason to know of the UL Certification Marks and the

UL Service Mark at the time Defendants commenced use of their Counterfeit Mark. Defendants were on constructive notice of the UL Certification Marks and the UL Service Mark by virtue of their federal registration. Defendants also had notice of the UL Certification Marks by virtue of the GSA entered into by B&B Signs & Awnings, Inc. and UL.

63.     Upon information and belief, Defendants intentionally adopted and used the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and UL Service Mark.

## COUNT ONE

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

64.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

65.     Defendants' Counterfeit Mark is identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause (i) confusion, mistake, and deception as to the certification of Defendants' electric signs, (ii) the public to be confused, deceived, and to assume erroneously that Defendants' electric signs have been certified by UL or that Defendants are in some way connected with, licensed, authorized, certified by, or affiliated with UL, and (iii) irreparable injury and damage to UL and to the goodwill and reputation symbolized by the UL Certification Marks and the UL Service Mark.

66.     Likelihood of confusion is enhanced by the fact that the UL Certification Marks and the UL Service Mark are strong, well-known, and entitled to a broad scope of protection.

67.     Likelihood of confusion is also enhanced by the fact that the Counterfeit Mark, the UL Certification Marks and the UL Service Mark prominently incorporate the key

component "UL."

68.     Since 2007, Defendants are not affiliated or connected with UL and have not been endorsed or sponsored by UL, nor has UL tested or certified any of Defendants' electric signs offered or sold or intended to be sold by Defendants bearing the Counterfeit Mark.

69.     Since 2007, Defendants have never obtained the permission of UL to use the Counterfeit Mark, nor has UL certified any of Defendants' electric signs bearing the Counterfeit Mark.

70.     UL's United States Trademark Registrations set out above provide, at the very least, constructive notice to Defendants of the rights of UL in and to the UL Certification Marks and the UL Service Mark.

71.     Defendants' use of the Counterfeit Mark in connection with the Defendants' electric signs is likely to cause confusion, mistake, or deception of consumers as to the authorization or certification of the goods, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

72.     Consumers are likely to purchase or engage Defendants' electric signs being offered under the Counterfeit Mark, believing them to have been certified by UL, thereby resulting in a loss of goodwill and economic harm to UL.

73.     Upon information and belief, Defendants intentionally adopted and used the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and the UL Service Mark.  Defendants have recklessly placed electric signs into the marketplace which purport to have been tested by UL under appropriate safety standards, when in fact UL never performed any such testing on the electric signs Defendants are selling.

74.     UL is informed and believes and on that basis alleges that Defendants have

derived unlawful gains and profits from their infringing use of the Counterfeit Mark.

75.     The goodwill of UL's business under the UL Service Mark is of great value, and

UL will suffer irreparable harm should Defendants' infringement be allowed to continue to the

detriment of the trade reputation and goodwill of UL for which damage UL cannot be adequately

compensated at law.

76.     UL has no control over whether the goods offered by Defendants meet the

requirements of  UL 48, and Defendants have not submitted their electric signs for testing.  Thus,

the great value of the UL Certification Marks and the UL Service Mark is subject to damage by

an entity it cannot control.

77.     Unless Defendants are enjoined by this Court from so doing, UL will continue to

suffer irreparable harm and injury to its goodwill and reputation.

78.     Upon information and belief, Defendants have engaged in acts of infringement,

with knowledge of UL's exclusive rights in and to the UL Certification Marks and the UL

Service Mark in connection with the Certification Services and the UL Services, and Defendants

continue in such acts of intentional infringement, thus entitling UL to an award of treble

damages, disgorgement of Defendants' profits, and attorneys' fees and costs in bringing and

maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

## COUNT TWO

### (Counterfeit of Registered Mark – 15 U.S.C. § 1114)

79.     UL repeats and realleges each and every allegation contained in the preceding

paragraphs as if set forth herein in full.

80.     UL owns valid and incontestable United States Trademark Registrations for its

UL Certification Marks, as set out above.

81.     Well before any of Defendants' actions complained of herein were committed, UL had continuously used the UL Certification Marks throughout the United States in connection with its Certification Services.

82.     Defendants use a non-genuine version of the UL Certification Marks and UL Service Mark that is identical to, or substantially indistinguishable from, the UL Certification Marks and UL Service Mark.

83.     The UL Certification Marks are registered on the Principal Register as a certification mark, and Defendants are intentionally using the Counterfeit Mark to falsely suggest that UL has certified Defendants' electric signs.

84.     UL did not authorize Defendants' use of the Counterfeit Mark, and such unauthorized use of the UL Certification Marks and UL Service Mark is likely to confuse consumers into falsely believing that Defendants' electric signs are certified by UL when, in fact, they are not.

85.     Defendants' use of the Counterfeit Mark without consent from UL was and is a willful and intentional infringement of UL's registered UL Certification Marks and UL Service Mark.

86.     Defendants have profited from their acts of infringement.  UL is entitled to recover Defendants' profits arising from the infringement, any damages sustained by UL arising from said infringement, as well as the costs of this action.  UL also is entitled to an enhanced award of profits and/or damages to fully and adequately compensate it for Defendants' infringement.  At its election, UL also is entitled to statutory damages.

87.     Defendants have caused and, unless enjoined by this Court, will continue to cause

irreparable injury to UL that is not fully compensable in monetary damages. UL is therefore entitled to a permanent injunction enjoining and restraining Defendants from use of the UL Certification Marks and UL Service Mark or any other mark that is confusingly similar to the UL Certification Marks and the UL Service Mark.

## COUNT THREE

### (Federal Unfair Competition and False Designation of Origin and False and Misleading Representations – 15 U.S.C. § 1125(a))

88.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

89.     Defendants' use of the Counterfeit Mark constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendants' electric signs offered for sale under Defendants' Counterfeit Mark have been certified by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

90.     Defendants' actions cause or are likely to cause confusion or mistake among the public as to the testing and certification of Defendants' electric signs offered for sale bearing Defendants' Counterfeit Mark, or to confuse the public into believing that Defendants' electric signs are otherwise affiliated, connected, associated with, or sponsored by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     UL has no control over the nature and quality of Defendants' electric signs offered for sale bearing Defendants' Counterfeit Mark.   Any failure, neglect, or default of Defendants in providing goods has reflected, and will continue to reflect, adversely on UL.

92.     Upon information and belief, Defendants intentionally adopted and used the

Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and the UL Service Mark.

93.     UL is informed and believes and on that basis alleges that Defendants have derived unlawful gains and profits from its infringement of the UL Certification Marks and the UL Service Mark.

94.     The goodwill of UL's business under the UL Service Mark is of great value, and UL will suffer irreparable harm to its trade reputation and goodwill, should Defendants' acts of unfair competition and false representation and designations be allowed to continue.

95.     UL has no control over the quality of the electric signs offered by Defendants. Thus, the value of the UL Certification Marks and the UL Service Mark is subject to damage by entities and individuals it cannot control.  Unless enjoined by this Court from so doing, Defendants will continue to engage in acts of unfair competition, false representation and designation, to the irreparable damage and injury of UL.

96.     Upon information and belief, from the outset, Defendants have engaged in acts of unfair competition, false representation and designation, with knowledge of the exclusive rights of UL in and to the UL Certification Marks and the UL Service Mark, and Defendants continue in such acts of unfair competition and intentional false representation and designation, thus entitling UL to an award of its actual damages, disgorgement of Defendants' profits, and attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT FOUR

## (Deceptive Trade Practices 815 ILCS 510/1 *et seq.*)

97.     UL repeats and realleges each and every allegation contained in the preceding

paragraphs as if set forth herein in full.

98.     The above-described conduct of Defendants constitutes deceptive trade practices in violation of 815 ILCS 510/1 et seq. insofar as it:

(a) passes off goods or services as those of another;

(b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(d) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; and

(e) represents that goods or services are of a particular standard, quality, or grade;

99.     Defendants conduct constitutes deceptive trade practices in that their conduct in trade and commerce use and employ practices set out in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression and/or omission of a material fact, with an intent that others rely upon the concealment, suppression or omission of such material act.

100.    Defendants have engaged in the above-described conduct willfully and deliberately and with full knowledge of UL's rights.

101.    Defendants' aforesaid conduct has caused and, unless and until such conduct is restrained and enjoined by this Court, will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to its reputation and goodwill.

102.     As the direct and proximate result of Defendants' statutory violations and other wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.

103.     Defendants have realized revenue and profits by virtue of their wrongful conduct that they otherwise would not have obtained and to which they is not entitled.

104.     UL has no adequate remedy at law for Defendants wrongful conduct.

## COUNT FIVE

### (Consumer Fraud and Deceptive Business Practices 815 ILCS 505/1 *et seq.*)

105.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

106.     The above-described conduct of Defendants constitutes deceptive business practices in violation of 815 ILCS 505/1 et seq. insofar as it:

(a) passes off goods or services as those of another;

(b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(d) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; and

(e) represents that goods or services are of a particular standard, quality, or grade;

107.     Defendants wrongful conduct stated above constitute deceptive business practices in violation of 815 ILCS 505/2.

21

108.     Defendants have engaged in the above-described conduct willfully and deliberately and with full knowledge of UL's rights.

109.     Defendants aforesaid conduct has caused and, unless and until such conduct is restrained and enjoined by this Court, will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to its reputation and goodwill.

110.     As the direct and proximate result of Defendants' statutory violations and other wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.

111.     Defendants have realized revenue and profits by virtue of its wrongful conduct that it otherwise would not have obtained and to which it is not entitled.

112.     UL has no adequate remedy at law for Defendants wrongful conduct.

## COUNT SIX

### (Breach of Contract)

113.     On January 21, 2002, B&B Signs & Awnings Inc. and UL entered into the GSA.

114.     UL has performed all of the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the GSA.

115.     B&B Signs & Awnings Inc. breached the GSA when it failed to discontinue usage of the UL Certification Marks following termination of the GSA on January 19, 2007.

116.     B&B Signs & Awnings Inc. further breached the GSA when it continued to affix labels bearing the UL Certification Marks on products that were neither tested nor certified by UL.

117.     B&B Signs & Awnings Inc. has engaged in the above-described conduct willfully and deliberately and with full knowledge of UL's rights.

118.    As a result of B&B Signs & Awnings Inc.'s continuing breach of the GSA, UL has been damaged, and will continue to be damaged, unless and until such breach is restrained and enjoined by this Court.

119.    As the direct and proximate result of B&B Signs & Awnings Inc.'s breach of the GSA, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.  Unless enjoined, B&B Signs & Awnings Inc.'s breaches will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to its reputation and goodwill.

120.    B&B Signs & Awnings Inc. has realized revenue and profits by virtue of its breaches that it otherwise would not have obtained and to which it is not entitled.

121.    UL has no adequate remedy at law for B&B Signs & Awnings Inc.'s breaches.

**ALLEGATIONS OF DAMAGE COMMON TO ALL CLAIMS FOR RELIEF**

122.    UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

123.    UL has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Defendants' wrongful conduct.  Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of UL.  UL's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

**PRAYER FOR RELIEF**

WHEREFORE, UL respectfully prays the Court:

A.    Enter a judgment in favor of UL and against Defendants, jointly and severally, on all Counts alleged herein.

B.      Designate this action an exceptional case entitling UL to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

C.      Issue permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from:

(i)     imitating, copying, or making any other infringing use of the UL Service Mark and the UL Certification Marks by the Defendants' Counterfeit Mark, and any other mark now or hereafter confusingly similar to the UL Service Mark or the UL Certification Mark;

(ii)    manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Service Mark, the UL Certification Marks, Defendants' Counterfeit Mark, or any mark confusingly similar thereto;

(iii)   using any false designation of origin or false description or statement that can or is likely to erroneously lead the trade or public or individuals to believe that any good has been provided, produced, distributed, offered for distribution, circulated, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

(iv)    using the names, logos, or other variations thereof of the UL Service

Mark, the UL Certification Marks, or Defendants' Counterfeit Mark in any of Defendants' trade or corporate names;

(v)     engaging in any other activity constituting an infringement of the UL Service Mark, the UL Certification Marks, or of the rights of UL in, or right to use or to exploit the UL Service Marks and the UL Certification Marks; and

(vi)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above;

D.     Order Defendants, at their own expense, and subject to review by UL, to recall all products and marketing, promotional, and advertising materials that bear or incorporate Defendants' Counterfeit Mark, or any mark confusingly similar to the UL Certification Marks or the UL Service Mark, which have been manufactured, distributed, sold, or shipped by Defendants or on their behalf, and to reimburse all customers from which said materials are recalled.

E.     Order Defendants to immediately produce and turn over to UL's counsel, all products, labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under its control, bearing the Defendants' Counterfeit Mark, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same.

F.     Order Defendants to immediately supply UL with a complete list of entities to whom they distributed and/or sold products falsely bearing the UL Certification Mark as well as complete information regarding the sourcing and manufacture of Defendant's products bearing

the Counterfeit Mark.

G.      Order expedited discovery to commence immediately.

H.      Order Defendants to publish notice to all customers or members of the trade who

may have seen or heard of Defendants' use of Defendants' Counterfeit Mark, as well as to the

appropriate regulatory bodies, which notice shall disclaim any connection with UL and shall

advise them of the Court's injunction order and of Defendants' discontinuance from all use of

Defendants' Counterfeit Mark;

I.      Order Defendants to file with this Court and to serve upon UL within thirty (30)

days after service upon Defendants of an injunction in this action, a written report by

Defendants, under oath, setting forth in detail the manner in which Defendants have complied

with the injunction.

J.      Order Defendants to pay the costs of corrective advertising and any public,

regulatory or other notices issued by UL;

K.      Order Defendants to hold in trust, as constructive trustees for the benefit of UL,

their profits obtained from their provision of the Defendants' electric signs offered for sale under

Defendants' Counterfeit Mark;

L.      Order Defendants to provide UL a full and complete accounting of all amounts

due and owing to UL as a result of Defendants' illegal activities;

M.      Order Defendants to pay the general, special, actual, and statutory damages of UL

as follows:

(i)      UL's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a),

trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation

of the federally registered trademarks of UL; and

(ii)    If UL so elects, statutory damages of up to $2,000,000 per counterfeit

mark, per type of product sold, offered for sale, or distributed, pursuant to

15 U.S.C. § 1117(c);

N.    Order Defendants to pay to UL both the costs of this action and reasonable

attorneys' fees incurred by UL in prosecuting this action, pursuant to 15 U.S.C. § 1117(a).

O.    Award UL its prejudgment interest; and

P.    Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

UL hereby demands a trial by jury of all triable issues raised by this Complaint.


DATED:  December 1, 2015        GREENBERG TRAURIG, LLP

By: /s/ Cameron R. Nelson
Cameron R. Nelson
Matthew J. Levinstein
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Chicago, IL 60601
(312) 456-1020
nelson@gtlaw.com
levinsteinm@gtlaw.com

*Attorneys for Plaintiff UL LLC*